MARY CALENDRO, Plaintiff, and LORENZO NATALINI, Intervener, Appellants, v. AMERICAN AND FOREIGN INSURANCE COMPANY, Defendant, and HARTFORD FIRE INSURANCE COMPANY, Intervener, Appellees.

No. 44800.

JANUARY 9, 1940.

REHEARING DENIED APRIL 5, 1940.

Maher & Mullen, for appellants.

John E. Mulroney and Helsell, Burnquist & Bradshaw, for appellees.

MILLER, J.—This suit was commenced by the plaintiff, Mary Calendro formerly Mary Fracobins. Subsequently, Lorenzo Natalini intervened, claiming an assignment from the plaintiff. As their rights are identical in so far as the fund here sought is concerned, we will consider the case as though the original plaintiff were the only plaintiff involved.

The petition alleged that on August 19, 1935, the defendant, American and Foreign Insurance Company, issued to plaintiff a policy of fire insurance in the sum of $1,200 on plaintiff's dwelling house; on January 25, 1938, the building was totally destroyed by fire; it was worth $1,200 at the time of the loss, plaintiff has complied with the provisions of the policy; judgment was prayed in the sum of $1,200 with interest and costs.

The answer of defendant company was a general denial. Subsequently, it tendered the sum of $1,000 and court costs to the date of tender in full settlement of plaintiff's claim. Plain-

tiff filed an acceptance of the offer and the defendant paid into court $1,000 together with $11.75 to cover court costs.

Between the date of the acceptance of the offer and the payment of the money, the Hartford Fire Insurance Company intervened, asserting that on February 16, 1935, it issued a policy of fire insurance to the plaintiff on the same property in the sum of $950 with a loss payable clause in favor of the Home Owners' Loan Corporation, mortgagee of the property; the policy provided it should be void if the insured "shall hereafter procure any other contracts of insurance, valid or invalid, on the property covered * * * by this policy"; plaintiff's policy with the defendant company was thereafter procured in violation of such provision and, on account thereof, the Hartford's policy became void; after the loss occurred, the Hartford denied liability to the HOLC, purchased the note and mortgage held by it, and now holds the same as assignee of the HOLC; the mortgage provided for fire insurance and for a lien upon any fire insurance that plaintiff might place on the property; the Hartford, as assignee of the note and mortgage, is entitled to enforce the same and to establish a lien against the proceeds of defendant's policy. The prayer of the petition of intervention was for the establishment of such lien.

The plaintiff answered the petition of intervention of the Hartford by asserting that the Hartford did not issue to plaintiff any policy of insurance but executed and delivered to the HOLC a certificate evidencing insurance coverage on the premises, and insuring the interests of plaintiff and the HOLC against loss by fire for a period of 3 years from February 16, 1935, to February 16, 1938; said certificate contained no provision prohibiting additional insurance and the agreement between plaintiff and the Hartford, or the HOLC and the Hartford, did not prohibit such additional coverage; plaintiff had no notice or knowledge as to the terms and conditions of the certificate; plaintiff's policy with defendant company was taken for the sole benefit of plaintiff and neither the HOLC nor the Hartford have any interest in the proceeds thereof; the provisions for insurance coverage in plaintiff's mortgage with the HOLC were fully complied with by the policy with the Hartford; plaintiff's procurement of insurance with defendant company did not forfeit plaintiff's right under the certificate procured from the

Hartford; the payment by the Hartford to the HOLC was made in payment of a loss sustained under the certificate, constituted a satisfaction of the note and mortgage, extinguished plaintiff's liability thereon, and the Hartford acquired no rights of subrogation under the purported assignment thereof; by making claim to the proceeds of defendant's policy, the Hartford waived its right to claim that its policy was void and this constituted an election which bars the Hartford from claiming a violation by plaintiff of its certificate of insurance or a forfeiture thereof. Plaintiff prayed that the petition of the Hartford Fire Insurance Company be dismissed, that the note and mortgage asserted by such intervener be canceled, and that plaintiff have judgment against the intervener for costs.

At the trial, the adverse parties were the plaintiff and the intervener, Hartford Fire Insurance Company, the latter of whom assumed the burden of proof. The evidence showed that the Hartford entered into negotiations with the HOLC with reference to insuring properties upon which the latter corporation had mortgages. As a result of such negotiations, a written contract was entered into on August 21, 1933. This contract provided that the HOLC should have the privilege of executing orders for insurance on all properties where it had an insurable interest, the order to set forth the amount of insurance on each building, and the liability of the Hartford should automatically become effective and attach in accordance with the requirements set forth in the order for insurance. The Hartford should arrange forms for the use of the HOLC. Where the interest of the HOLC was other than that of owner, and a loss should occur, it should be adjusted with the owner of the property, it being agreed that the terms and conditions of the standard mortgage clause should apply to any property insured. The insurance as to the HOLC should not be invalidated by any act or neglect of the mortgagor, and, in the case the mortgagor neglected to pay any premium, the HOLC would, on demand, pay the same. The Hartford reserved the right to cancel a policy at any time, as specified by its terms, but in such case, the policy should continue in force for the benefit only of the HOLC for 10 days after notice to the HOLC; whenever the Hartford should pay the HOLC any sum for loss or damage under the policy and claim that, as to the mortgagor, no liabil-

ity existed, the Hartford, to the extent of such payment, would be subrogated to all of the rights of the HOLC, as mortgagee, and the Hartford might, at its option, pay the HOLC the mortgage in full and receive an assignment of the mortgage. The contract also provided that, where the conditions of the agreement conflicted with the conditions of the standard fire policy or statutes of any state, the standard policy and the statutes of such state should govern the construction of the agreement.

Pursuant to this contract, the Hartford issued a master policy in each state. The master policy for Iowa was known as Policy No. Iowa-5000, was an Iowa standard fire insurance policy, adopted pursuant to section 9018 of the Code, which includes the following provision:

"IV. Unless otherwise provided by agreement of this company this policy shall be void:

"a. If the insured now has or shall hereafter procure any other contract of insurance valid or invalid on the property covered in whole or in part by this policy."

This master policy was kept in the possession of the Hartford, at the request of the HOLC.

When the plaintiff's insurance on the property covered by her mortgage with the HOLC was about to expire, a notice was sent to her of such expiration. After the expiration, plaintiff was notified by the HOLC as follows:

"We have been obliged to order the insurance described below because you have failed to provide us with acceptable coverage to be held as collateral to your mortgage.

"The premium for this insurance is due and payable at once. Prompt remittance is requested."

The amount of the premium statement enclosed was $11.50.

In the meantime, on April 25, 1935, the HOLC had sent to the Hartford an order for insurance on plaintiff's property from February 16, 1935, in the amount of $950 for a term of 3 years, the coverage to include fire and to be, "subject to the stipulations, provisions and conditions contained in the special agreement, the loss, if any, is payable to the assured named herein and the Home Owners' Loan Corporation, Mortgagee, as its interest may appear." Thereafter, the HOLC sent the

Hartford a disposition order to issue a certificate of insurance pursuant to the order of April 25, 1935.

Pursuant to the instructions from the HOLC, given as aforesaid, the Hartford issued a certificate which provides as follows:

"In consideration of Eleven and 50/100 dollars premium the Hartford Fire Insurance Company of Hartford, Conn., does hereby insure Home Owners' Loan Corporation, Mortgagee, and Mary and Angello Fracobins as their interests may appear for indemnity against loss or damage by Fire, Lightning, Windstorms, Cyclones, Tornadoes and Hail for the term of Three Years from the 16th day of February, 1935, at 12 o'clock noon to the 16th day of February, 1938, at 12 o'clock noon to the amount of Nine Hundred Fifty and No/100 dollars as follows: (Then follows description of property insured) This certificate is issued by the Hartford Fire Insurance Company and accepted by the Home Owners' Loan Corporation, under Open Policy No. Ia. 5000 and is subject to the terms thereof. Subject to the stipulations, provisions and conditions contained in the open policy, the loss, if any, is payable to the assured named herein and the Home Owners' Loan Corporation, Mortgagee, as its interest may appear."

At the time that this certificate was issued, the Hartford also issued a complete insurance policy which contained the standard provisions set forth in the master policy Iowa-5000, contained a loss payable clause to the HOLC and, in the provision for additional insurance, was typewritten the word "None". This later policy was not delivered to the HOLC, but was retained in the files of the Hartford. The HOLC knew that that was the procedure followed by the Hartford. The premium for this insurance was charged by HOLC to plaintiff and was paid by plaintiff. The plaintiff at no time reported to the HOLC or the Hartford that she had taken out insurance with the defendant company, although plaintiff had been notified by the HOLC that all insurance on the mortgaged property should be submitted to the HOLC.

On January 29, 1938, the HOLC sent to the Hartford a notice of loss by virtue of the destruction of plaintiff's property by fire on January 25, 1938. The notice included the following:

"1. The amount of our loan is $941.54. This loan was closed on the ...... day of June 1934, and embraces the property which is described below, viz.: Lehigh, Iowa.

"2. Claim is made on account of the Dwelling insured for $900. under the above numbered certificate."

Negotiations were then had by the HOLC and the Hartford. The Hartford denied liability under its certificate but paid the amount of the note and mortgage on August 17, 1938, and received from the HOLC an assignment without recourse of the plaintiff's note and mortgage. The mortgage contains a provision that the mortgagor shall keep the buildings insured against loss or damage by fire under a mortgage clause in form approved by the HOLC and in the event any sum of money becomes payable under such policy or policies, the HOLC, its representatives or assigns "shall have the right to receive and apply the same on account of the indebtedness hereby secured."

The court found that the allegations of the Hartford's petition of intervention were true, and that it was entitled to the relief demanded; that plaintiff bound herself to keep the buildings insured under a mortgage clause, and gave the right to the HOLC to do so if she did not; the HOLC did this; the policy contained the provision, prescribed by our statute, that it would be void if, unless otherwise provided by agreement, the insured procured any other contract of insurance; such provision is valid and must be observed to avoid forfeiture; by taking the additional insurance in the defendant company, without the consent of the Hartford, plaintiff terminated the Hartford's insurance and was then in the position of holding a policy payable to herself without a loss payable clause in favor of the HOLC, but under the terms of the mortgage, the HOLC would be protected by said policy to the amount of its mortgage; the HOLC assigned its mortgage to the Hartford, which it had a right to do, and the Hartford was bound to take the assignment under its contract with the HOLC; by the assignment, the Hartford became subrogated to the rights of the HOLC and was entitled to be paid the amount due on the mortgage. The amount of the Hartford's lien was determined to be $856.15 with interest at the rate of $.11433 from August 17, 1938, which was decreed to be a specific lien upon the $1,000 in the hands of the clerk, and the clerk was ordered to pay the

same to the Hartford. Any balance remaining after the payment of said sum and the court costs was directed to be delivered to plaintiff's assignee. It was further directed that the note and mortgage, given by plaintiff, be canceled and turned over to the clerk as a condition precedent to the payment to the Hartford of the sum ordered. Costs were taxed against the plaintiff in the sum of $30.65. From this decree the plaintiff and her assignee have appealed to this court, asserting various grounds for reversal of such decree.

I. One of the propositions urged by appellants is that the provision prohibiting additional insurance was not properly included in the insurance contract of the Hartford. We find no merit in this contention. The contract is evidenced by the certificate hereinbefore quoted from. As there pointed out, this certificate specifically refers to the open policy No. Iowa-5000, and is subject to the terms thereof. This open policy was specifically provided for in the contract between the Hartford and the HOLC, paragraph 22 of which provided:

"This contract dated this 21st day of August 1933, shall be attached and made a part of open policies of each state or territory where this contract is to be performed."

The open policy Iowa-5000 merely sets forth the standard fire insurance policy for Iowa, which has been adopted pursuant to section 9018 of the Code. This section of the Code is an open policy, containing all of the provisions necessary for an insurance contract except the names of the parties, the description of the property insured, the period of the insurance, and the premium to be paid. Section 9019 of the Code provides that any company violating section 9018 shall be guilty of a misdemeanor, subject to the payment of a fine and, until the payment of such fine, shall be disqualified from doing any insurance business in this state. The contract between the Hartford and the HOLC also provided that the standard policy and statutes of each state shall govern the construction of the agreement. We must presume that the Hartford and the HOLC intended to obey the law. The evidence demonstrates conclusively that they undertook to comply with the statutes of this state and intended that any policy on property situated in this state should contain the provisions required by section 9018 of the Code. We hold that the instruments executed by the Hartford and the

HOLC must be construed together, and that, construing them together, the requirements of section 9018 of the Code are a part of the contract in reference to plaintiff's dwelling house. Accordingly, the provisions of paragraph IV, sub. a of section 9018 of the Code are properly considered a part of the contract and the trial court correctly construed the contract in this regard.

II. Appellants also contend that the record is fatally deficient in that no evidence was introduced to show the execution of plaintiff's contract with the defendant, American and Foreign Insurance Company. There is no evidence in the record, but the record includes the pleadings as well as the evidence. In the pleadings, plaintiff asserts that. the policy was issued on August 19, 1935, in the sum of $1,200 on plaintiff's dwelling house. The petition of intervention asserts that the plaintiff took out additional insurance with the American and Foreign Insurance Company "on said house in the sum of $1,200." Plaintiff's answer to such petition of intervention re-asserts the allegations of the petition. Construing the pleadings as a whole, we are satisfied that they present no issue requiring the introduction of evidence in reference to the policy of the defendant company. Under the pleadings, the parties are in agreement that the policy was issued on August 19, 1935, in the sum of $1,200 and that it covered the same property that was covered by. the insurance contract of the Hartford and the mortgage of the HOLC. There is no error in the findings of the trial court on this proposition.

III. Plaintiff asserts that the payment by the Hartford to the HOLC constituted an extinguishment of the note and mortgage held by the HOLC. The trial court held otherwise, and correctly so. The payment was made pursuant to an express contract between the parties that, in the event any act of the mortgagor should render the insurance void as to him, the Hartford should purchase the note and mortgage and secure an assignment thereof which would be enforceable against the mortgagor. The parties did not intend to extinguish the note and mortgage. They intended to preserve it and to assign to the Hartford all beneficial interest therein. The trial court correctly so held.

IV. It is claimed by appellants that the additional insurance with the defendant company did not constitute a for-

feiture of the coverage afforded to the plaintiff by the Hartford. One contention in this regard is that the evidence fails to show that the defendant's insurance policy was valid and collectible. This contention is based upon the fact that the defendant denied liability and thereafter compromised the case pursuant to the provisions of sections 12676 to 12679 of the Code. However, plaintiff contends that the policy of the Hartford was valid and collectible. The record shows that the Hartford also denied liability and thereafter purchased plaintiff's note and mortgage from the HOLC. We are of the opinion and hold that the policy of the defendant was valid and collectible as to the plaintiff to the extent of the amount paid into court, and that the policy of the Hartford was valid and collectible as to the HOLC to the extent of the amount paid to secure an assignment of plaintiff's note and mortgage.

It is also contended that there was no forfeiture because the breach of the Hartford's policy by the plaintiff was not a wilful, knowing and intentional breach thereof. The cases relied upon by appellants involve the avoidance of a policy because of the misrepresentation of a fact existing at the time the policy is issued. The record here involves the breach of the terms of the policy after it had been issued. Also, the cases relied upon by appellants were decided by this court prior to the enactment of section 9018 of the Code. Appellants also rely upon decisions of this court to the effect that an insurance policy is to be interpreted most strictly against the company issuing the same. These cases have no application to the interpretation of a standard form of policy required by legislative enactment. Under the plain and unambiguous terms of paragraph IV, sub. a of section 9018 of the Code, the additional insurance procured by the plaintiff rendered the policy of the Hartford void as to the plaintiff, unless the Hartford agreed to such additional insurance. The record shows that it did not even know of it and plaintiff does not claim that it agreed thereto. The court correctly held that the Hartford's policy was void as to the plaintiff. See Cornett v. Farmers Mut. Fire Ins. Assn., 208 Iowa 450, 224 N. W. 524.

V. By reason of the foregoing, the Hartford is the owner of the note and mortgage originally given by the plaintiff to the HOLC, and is entitled to enforce the same. This

brings us to the question whether or not, by virtue of its position as mortgagee, the Hartford is entitled to collect the amount of the mortgage from the fund paid into court by the defendant company. The defendant's policy was not introduced in evidence. From the pleadings, however, and from the arguments of counsel filed in this court, it appears to be conceded that the policy did not contain any clause making the proceeds thereof payable to the mortgagee. The trial court held that, notwithstanding this, under the terms of the mortgage, the HOLC was protected by the policy to the amount of the mortgage and that the Hartford, as assignee, was entitled to the same protection. Accordingly, the court adjudged that the Hartford had a lien agains the proceeds of the policy for the amount of the mortgage. In this the court erred.

To sustain the holding of the court in this regard, counsel for appellee cite and rely upon our statement in the case of First Trust Joint Stock Land Bank v. Duroe, 212 Iowa 795, 799, 237 N. W. 319, 321, to wit:

"It is well settled, that, when the mortgagor is bound by the terms of the mortgage to keep the premises insured for the security of the mortgagee, as between the mortgagee and the mortgagor an equitable lien arises in favor of the mortgagee for the money received upon the policy to the extent of the mortgage indebtedness, regardless of whether or not the policy is in express terms payable to the mortgagee, or whether or not it contains a mortgage clause making the same payable to the mortgagee, as his interest may appear. See Johnson v. Northern Minnesota Land & Investment Company, 168 Iowa 340 [150 N. W. 596]; Dunlop v. Avery, 89 N. Y. 592."

It will be noted that the above pronouncement was made in reliance upon our holding in the case of Johnson v. Northern Minnesota Land & Investment Co., 168 Iowa 340, 344, 150 N. W. 596, 598, wherein we state:

"It seems to be settled that a mere mortgagee has no interest in a policy of insurance issued to a mortgagor upon the mortgaged property, unless such interest be created by some covenant or condition between mortgagor and mortgagee in relation thereto.

"In the absence of such covenant, the contract of insur-

ance is strictly personal between the insurance company and its patron. Ryan v. Adamson, 57 Iowa 30 [10 N. W. 287].

"On the other hand, it is equally well settled that where a mortgagor covenants to maintain insurance for the benefit of the mortgagee, then a policy of insurance held by him will inure to the benefit of the mortgagee as a matter of equitable right, regardless of whether the policy was in express terms payable to the mortgagee or not. Heins v. Wicke, 102 Iowa 396 [71 N. W. 345]; Swearengen v. Hartford Ins. Co., [56 S. C. 355] 34 S. E. 449."

It will be noted that, in the quotation last above set forth, we recognize that a mortgagee has no interest in a policy of insurance on the mortgaged property unless he is given such interest by some covenant or condition in the policy of insurance or the mortgage. In the absence of such covenant or condition, the contract of insurance is strictly personal between the insurance company and its patron. This proposition was expressly recognized by us in the Duroe case. In that case, the contract of insurance did not contain a loss payable clause in favor of the mortgagee. The mortgage did contain a provision for insurance for the benefit of the mortgagee. However, the insured under the policy was a subsequent purchaser of the property and the deed did not contain any assumption clause. This court held that the provision in the mortgage did not constitute a covenant running with the land; that the insured was not obligated by the provision in the mortgage to procure insurance for the benefit of the mortgagee, and, since he had procured a policy for his protection alone, he was entitled to collect the proceeds to the exclusion of the mortgagee.

As above-stated, the defendant's policy contained no clause making its proceeds payable to the mortgagee. The Hartford, as mortgagee, must prevail, if at all, because of the covenants in the mortgage. Plaintiff claims that the covenant in the mortgage was complied with by the procurement of the Hartford's insurance, the premium for which was paid by plaintiff, and, since the plaintiff has complied with the covenant in the mortgage, there is no basis for establishing an equitable lien in favor of the mortgagee against the proceeds of defend- ant's policy. It seems to us that the position taken by us in

the Duroe case and in the Johnson case, hereinbefore quoted from, sustains plaintiff's position in this regard.

When plaintiff's home was destroyed by fire, a loss occurred which, under the record, constituted proper basis for claims against both of the insurance policies involved. Under plaintiff's mortgage, she was obligated to provide insurance for the benefit of the HOLC. She had discharged the obligation of such covenant in the mortgage by providing the Hartford's policy, which, under the record herein was valid and collectible as to the HOLC to the extent of the mortgage indebtedness, but was void as to the plaintiff. Plaintiff's policy with defendant company must be held, under the record herein, valid and collectible as to the plaintiff to the extent of the amount paid into court. However, the policy contained no covenant or condition making the proceeds available to the HOLC, and, since the plaintiff had discharged the obligation imposed upon her by the covenant in the mortgage by providing the Hartford's policy for the protection of the HOLC, there was no basis for the establishment of an equitable lien in favor of the HOLC against the proceeds of the defendant's policy. The HOLC was entitled to recover the full amount of its loss against the Hartford. It had no right upon which to base recovery against the defendant's policy. The plaintiff must be held under the record to have made proper claim against the defendant. She made no claim whatever against the Hartford until this action was brought. The HOLC made its claim against the Hartford. There is no showing that it ever made a claim against the defendant company.

When the mortgage was assigned to the Hartford, it received and was subrogated to all the rights of the HOLC but none other. In the case of Boyce v. Farmers Mut. Ins. Assn., 209 Iowa 11, 14, 227 N. W. 523, 524, we state:

"Preliminary to a discussion of the major propositions, it is convenient to recognize the general rights of an assignee. Such rights can rise no higher than those of the assignor. Union Bldg. Assn. v. Rockford Ins. Co., 83 Iowa 647 [49 N. W. 1032, 14 L. R. A. 248, 32 Am. St. Rep. 323]; Steltzer v. Chicago, M. & St. P. R. Co., 156 Iowa 1 [134 N. W. 573, L. R. A. 1915E, 1017]."

Since the HOLC had no equitable lien against the proceeds

of the defendant's policy, the Hartford, as its assignee, likewise has no such lien. In holding otherwise, the court erred.

The court properly sustained the validity of the Hartford's assignment of the mortgage as against the plaintiff, but should have awarded the proceeds of defendant's policy to the intervener Natalini, as assignee of the plaintiff, free from any lien in favor of the Hartford. Accordingly, the decree is affirmed on the appeal of the plaintiff, Mary Calendro, but is reversed on the appeal of the intervener, Lorenzo Natalini, and the cause is remanded for the entry of a decree in harmony with this opinion.—Affirmed on appeal of plaintiff, Mary Calendro; reversed on appeal of intervener, Lorenzo Natalini.

STIGER, SAGER, HALE, and BLISS, JJ., concur.